UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|   |   |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Case No. 94-cr-310 (ABJ/GMH) |
| ) | |
| CRYSTAL MICHELLE RANSOM, ) | |
| ) | |
| Defendant. ) | |

**MAGISTRATE JUDGE'S**
**REPORT AND RECOMMENDATION**

Crystal Michelle Ransom, proceeding *pro se*, moves to expunge the record of her 1994 guilty plea to a single count of bank embezzlement in violation of 18 U.S.C. § 656. ECF Nos. 12, 16.[1] The government opposes the motion. ECF No. 15. Although the undersigned commends Ms. Ransom for living as a law-abiding citizen for the past 27 years, the undersigned must recommend that her motion be denied.

**I.   BACKGROUND**

Ms. Ransom was charged by information with one count of bank embezzlement in violation of 18 U.S.C. § 656 on August 1, 1994. ECF No. 2. Shortly thereafter, she entered into a plea agreement with the government and pleaded guilty to that charge. ECF No. 4; Minute Entry (Aug. 11, 1994). In October 1994, Judge Stanley S. Harris sentenced Ms. Ransom to five years of probation, $20,001 in restitution, and a $50 special assessment. Minute Entry (Oct. 28, 1994). Judgment was entered on October 31, 1994.

---

[1] Defendant filed her first motion to expunge on January 18, 2022. ECF No. 12. Just over one month later, she filed an amended motion (ECF No. 16) that, as the undersigned noted, was substantively identical to the first motion and merely omitted an unrelated document that was attached to the first motion. Minute Order (Feb. 25, 2022). The undersigned struck the first motion, so the operative motion is now the one filed in February 2022 at ECF No. 16.

In February 2022, Ms. Ransom sent a letter to the Court asking that it expunge her criminal record related to her 1994 conviction. ECF No. 16. In the letter, Ms. Ransom seeks expungement because her criminal case "happened when [she] was 24, [she is] now 51 and [has] lived with this all [her] life and [has] not been in any trouble since." *Id.* at 1. The brief letter makes no other substantive argument in support of expungement. The government opposes the motion, arguing that Ms. Ransom has not come close to presenting the extraordinary circumstances that might justify expungement. ECF No. 15 at 2–5. The undersigned required that Ms. Ransom file her reply, if any, to the government's opposition on or before March 15, 2022. *See* Minute Entry (Feb. 22, 2022). No reply was filed.

## II. LEGAL STANDARD

Under the law of the D.C. Circuit, a district court has jurisdiction over requests to expunge criminal records and may do so "where it is required or authorized by statute, or 'in the exercise of [its] inherent equitable powers.'" *United States v. Spinner*, 72 F. Supp. 3d 266, 268 (D.D.C. 2014) (alteration in original) (quoting *Doe v. Webster*, 606 F.2d 1226, 1230 (D.C. Cir. 1979)).[2]

---

[2] Our Circuit appears to be an outlier in continuing to hold that district courts have jurisdiction to consider requests for expungement on equitable grounds. The First, Second, Third, Fourth, Sixth, Seventh, Eighth, Ninth, and Eleventh Circuits have all "held that *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375 (1994) precludes federal district courts from exercising ancillary jurisdiction over expungement requests based solely on equitable grounds." *United States v. Douglas*, 282 F. Supp. 3d 275, 277 n.2 (D.D.C. 2017); *see also United States v. Kennedy*, 835 F. App'x 695 (4th Cir. 2021) (Mem.); *United States v. Adalikwu*, 757 F. App'x 909, 912 (11th Cir. 2018); *United States v. Wahi*, 850 F.3d 296 (7th Cir. 2017); *Doe v. United States*, 833 F.3d 192, 199 (2d Cir. 2016); *United States v. Field*, 756 F.3d 911 (6th Cir. 2014); *United States v. Meyer*, 439 F.3d 855, 860 (8th Cir. 2006); *United States v. Coloian*, 480 F.3d 47 (1st Cir. 2007); *United States v. Dunegan*, 251 F.3d 477 (3d Cir. 2001); *United States v. Sumner*, 226 F.3d 1005, 1014 (9th Cir. 2000). Notably, the Tenth Circuit has resisted reading *Kokkonen* to abrogate district courts' ability to consider equitable expungement motions because the case "did not specifically address motions for expungement" and is therefore not "the sort of 'indisputable and pellucid . . . intervening (i.e., superseding) law that would permit us to hold (without en banc consideration)' that district courts lack jurisdiction to consider petitions for equitable expungement." *United States v. Trzaska*, 781 F. App'x 697, 700 n.2 (10th Cir. 2019) (alteration in original) (quoting *Barnes v. United States*, 776 F.3d 1134, 1147 (10th Cir. 2015)). The D.C. Circuit has not addressed the issue of equitable expungement motions post-*Kokkonen*, and district courts in this Circuit have continued to entertain equitable expungement requests without addressing *Kokkonen*'s impact, if any. *See, e.g., United States v. Hall*, No. CR 11-253-04, 2020 WL 1286386 (D.D.C. Mar. 18, 2020); *United States v. Lillicotch*, No. 07-CR-00169-1, 2019 WL 2138023 (D.D.C. May 16, 2019); *United States v. Lowell*, No. 80-CR-00257, 2019 WL 1454004 (D.D.C. Apr. 2, 2019). Nor do the parties here broach the question. The Court need not venture any further into this thicket because "district judges, like panels of [the D.C. Circuit], are obligated to follow controlling circuit precedent until either [the D.C. Circuit], sitting en banc, or the

Where, as here, there is no statutory basis for expungement, the D.C. Circuit has held that courts "have the inherent, equitable power to expunge arrest records . . . 'when that remedy is necessary and appropriate in order to preserve basic legal rights.'" *Livingston v. United States*, 759 F.2d 74, 78 (D.C. Cir. 1985) (footnote omitted) (quoting *Sullivan v. Murphy*, 478 F.2d 938, 968 (D.C. Cir. 1973)); *see also Doe*, 606 F.2d at 1230 n.8 (noting that "[t]he power to order expungement is a part of the general power of the federal courts to fashion appropriate remedies to protect important legal rights"); *Chastain v. Kelley*, 510 F.2d 1232, 1235 (D.C. Cir. 1975) (explaining that expungement is appropriate only "where necessary to vindicate rights secured by the Constitution or by statute"); *Menard v. Saxbe*, 498 F.2d 1017, 1023 (D.C. Cir. 1974) ("The judicial remedy of expungement is inherent and is not dependent on express statutory provision, and it exists to vindicate substantial rights provided by statute as well as by organic law." (citation omitted)).

As the D.C. Circuit has more recently explained, "expungement is a potentially available remedy for legally cognizable injuries." *Abdelfattah v. U.S. Dep't of Homeland Sec.*, 787 F.3d 524, 536–38 (D.C. Cir. 2015) (emphasis omitted). In other words, while no "nebulous right to expungement of government records" is available—even for "government records that are inaccurate, were illegally obtained, or are 'prejudicial without serving any proper purpose'"—expungement may be an appropriate remedy where a violation of an established legal right has occurred or is imminent. *Id*. at 538 (emphasis omitted) (quoting *Chastain*, 510 F.2d at 1236). However, "absent specific statutory authority it would be wholly inappropriate to order . . . expungement in a case . . . where there has been not only a valid arrest but a valid conviction." *Doe*, 606 F.2d at 1231. For that reason, "[m]erely citing . . . the fact that a criminal record may

---

Supreme Court, overrule it." *United States v. Torres*, 115 F.3d 1033, 1036 (D.C. Cir. 1997). Thus, because *Doe* remains good law and *Kokkonen*'s impact on equitable expungement motions is arguably less than "indisputable and pellucid," *Trzaska*, 781 F. App'x at 700 n.2, the undersigned will hew to controlling D.C. Circuit precedent holding that the Court may take jurisdiction over Ms. Ransom's motion.

3

foreclose or present difficulties in finding employment opportunities does not meet the fundamental prerequisite of setting out a legally cognizable claim to vindicate rights secured by the Constitution or by statute . . . ." *Douglas*, 282 F. Supp. 3d at 278; *see also United States v. Woods*, 313 F. Supp. 3d 197, 199–200 (D.D.C. 2018) ("[A]bsent some showing of a 'violation of rights,' difficulty finding meaningful employment does not 'rise to the level of exceptional circumstances necessary to justify this Court's exercise of its equitable power to expunge records.'" (quoting *United States v. Wilson*, No. 98-MJ-0558, 2008 WL 2446134, at *1 (D.D.C. June 17, 2008))); *United States v. Baccous*, No. 99-cr-0596, 2013 WL 1707961, at *2 (D.D.C. Apr. 22, 2013) (holding that the defendant's "concerns regarding his employment and residential opportunities" were not extreme circumstances justifying expungement); *In re Reid*, 569 F. Supp. 2d 220, 222 (D.D.C. 2008) (holding that the "harm of being unable to obtain employment is insufficient on its own" to justify expungement).

Further, the fact that a former criminal has since lived as a law-abiding citizen, while laudable, almost never warrants expungement. *See, e.g.*, *Castillo v. United States*, No. 11-MC-754, 2013 U.S. Dist. LEXIS 144859, at *2 (E.D.N.Y. Oct. 7, 2013) (explaining that being a "good citizen" following criminal conduct, "while commendable, does not warrant relief" in the form of expungement); *see also United States v. Torres-Huerta*, 921 F.2d 282, 282 (9th Cir. 1990) (affirming the denial of defendant's motion to expunge where the defendant, as here, "contend[ed] that expungement is warranted in his case because his conviction was an 'aberration' in an otherwise law-abiding life"); *Ali v. United States*, No. 13-MC-342, 2013 WL 4048498, at *2 (E.D.N.Y. Aug. 9, 2013) ("Even where individuals have lived law-abiding lives after their arrests, courts require that they demonstrate extraordinary circumstances or imminent harm as a result of the arrest records to obtain expungement of their records."); *Schwab v. Gallas*, 724 F. Supp. 509,

4

511 (N.D. Ohio 1989) (finding that the defendant's law-abiding life subsequent to a felony conviction did not justify expungement); *United States v. Stromick*, 710 F. Supp. 613, 614 (D. Md. 1989) (finding that a convicted individual's subsequent law-abiding life did not warrant expungement).

### III.   DISCUSSION

Ms. Ransom's expungement request should be denied.  She does not challenge the basis for her arrest or guilty plea.  Nor does she assert any violations of the Constitution by the government in her arrest and prosecution, or any other extraordinary circumstances related to this case.  Rather, she seeks expungement solely on the grounds that she has "not been in any trouble since" her arrest and guilty plea in 1994.  ECF No. 16 at 1.  Yet good behavior alone is not reason enough wipe a criminal conviction off the books.

To be clear, and as the government acknowledges, Ms. Ransom is to be applauded for discontinuing her criminal conduct and carrying on her life as a law-abiding member of society.  ECF No. 15 at 4.  Nevertheless, staying out of trouble following a conviction, or even becoming a model citizen, is simply insufficient to warrant expungement.  *See, e.g.*, *United States v. Derouen*, 279 F. Supp. 3d 298, 299 (D.D.C. 2018) (denying expungement even though the defendant had been a "model citizen" for over ten years); *United States v. Spinner*, 72 F. Supp. 3d 266, 269 (D.D.C. 2014) (denying expungement even when the defendant had also shown "positive growth" and turned his life around); *United States v. Robinson*, 23 F. Supp. 3d 15, 17 (D.D.C. 2014) (denying expungement even when the defendant's family life was also harmed and the defendant was now a law-abiding citizen); *United States v. Archer*, No. 07-29, 2012 WL 5818244, at *1 (D.D.C. Nov. 13, 2012) (denying expungement even when it was the defendant's first conviction and the incidents were "completely out of character"); *In re Reid*, 569 F. Supp. 2d at 221 (denying

5

expungement even when the defendant committed the crime during a manic episode, before and after which she was an "intellectually capable, law abiding citizen"); *United States v. Wilson*, No. 98–mj–558, 2008 WL 2446134, at *1 (D.D.C. June 17, 2008) (denying expungement even when the defendant demonstrated "exemplary rehabilitation"). There is no reason not to apply this well-worn principle in this case.

Further, Ms. Ransom has "fail[ed] to identify any actual harm or other extreme circumstances arising out of [her] criminal record." *Mullen v. United States*, No. 12-MC-724, 2016 WL 1089261, at *2 (E.D.N.Y. Mar. 18, 2016) (denying a request for expungement on that basis); *see also Fernandez v. United States*, Nos. 09-MC-326, 98-CR-902, 2009 WL 2227140, at *2 (E.D.N.Y. July 24, 2009) (denying a motion to expunge where the petitioner did "not cite any specific examples that would provide support for a finding that her situation is especially harsh or extreme"). Again, she does not allege that the underlying criminal prosecution was beset by "flagrant constitutional violations," *Robinson*, 23 F. Supp. 3d at 16, or otherwise "challenge the legality of [her] conviction on . . . statutory grounds," *United States v. Evans*, 78 F. Supp. 3d 351, 353 (D.D.C. 2015). She does not even argue that her criminal conviction has caused vocational difficulties—which would, in any case, be insufficient. *See, e.g.*, *id.* at 352 ("The difficulty that a criminal conviction poses for a defendant seeking employment is not regarded as an extreme circumstance."); *Robinson*, 23 F. Supp. 3d at 16 ("[E]ven difficulties obtaining employment and securing housing are not regarded as extreme circumstances" justifying expungement.).

The undersigned must also weigh the government's "legitimate need for maintaining criminal records in order to efficiently conduct future criminal investigations." *Doe*, 606 F.2d at 1243. As the government here explains, retaining key records is important not only in the investigatory phase of the law enforcement process but also following a criminal conviction. ECF

No. 15 at 4. Courts in this District have recognized that "the government has . . . a demonstrated need to [maintain criminal records] in order to conduct future criminal investigations efficiently." *Woods*, 313 F. Supp. 3d at 200. Yet that is not all. "[B]ecause the sentencing ranges" calculated by the U.S. Sentencing Guidelines "reflect in part on a defendant's past criminal history," prior convictions are also critical to the formulation of appropriate punishment were other criminal activity to occur. *United States v. Salleh*, 863 F. Supp. 283, 284 (E.D. Va. 1994). Bottom line, Ms. Ransom's interests are not the only ones in play here.

Simply put, Ms. Ransom has not appropriately justified the need for expungement under this Circuit's precedent. Because she has failed to demonstrate that expungement is "necessary and appropriate in order to preserve basic legal rights," *Livingston*, 759 F.2d at 78 (quoting *Sullivan*, 478 F.2d at 968), and, in any event, has not established that her understandable desire to erase her criminal record should overtake the government's legitimate interest in maintaining accurate criminal records, her expungement request should be denied.

## CONCLUSION

For the reasons discussed herein, the undersigned **RECOMMENDS** that the Court **DENY** Ms. Ransom's motion to expunge.

\* \* \* \* \*

The parties are hereby advised that under the provisions of Local Rule 72.3(b) of the United States District Court for the District of Columbia, any party who objects to the Report and Recommendation must file a written objection thereto with the Clerk of this Court within 14 days of the party's receipt of this Report and Recommendation. The written objections must specifically identify the portion of the report and/or recommendation to which objection is made, and the basis for such objections. The parties are further advised that failure to file timely objections to the

7

findings and recommendations set forth in this report may waive their right of appeal from an order of the District Court that adopts such findings and recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985).

Date: March 17, 2022

_____
G. MICHAEL HARVEY
UNITED STATES MAGISTRATE JUDGE